IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MARVA JANE RICHARDSON-ROY, :
　:
    Plaintiff, :
　:
v. : Civ. No. 14-371-RGA
　:
FIDELITY INVESTMENTS, et al., :
　:
    Defendants. :

---

Marva Jane Richardson-Roy, Newark, Delaware. *Pro Se* Plaintiff.

Lori Ann Brewington, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, and Robyn L. Anderson, Esquire, Lathrop & Gage LLP, Kansas City, Missouri. Counsel for Defendant General Motors LLC.

**MEMORANDUM OPINION**

April 1, 2015
Wilmington, Delaware

**ANDREWS, U.S. District Judge:**

Plaintiff Marva Jane Richardson-Roy, who appears *pro se*, filed this action on March 24, 2014 pursuant to the Employment Retirement Security Income Act of 1974, 29 U.S.C. § 1001, *et seq.*, and the Pension Protection Act of 2006, seeking an "award and rightful claim to her portion of the pension of her former, now deceased, spouse," Howard N. Richardson. (D.I. 1, ¶1). The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Defendant General Motors LLC moves for summary judgment. (D.I. 18). Plaintiff opposes. The matter is fully briefed. (D.I. 19, 20, 21, 22).

I.  BACKGROUND

On March 10, 1994, Plaintiff and Howard divorced. (D.I 19-1 at 4). At the time of the divorce, Howard was employed by General Motors Corporation. (*Id.* at 40). In 1994, Howard notified his employer of the divorce decree and canceled Plaintiff's dependent health care coverage. (*Id.* at 2). Howard retired four years later. He elected to begin pension benefits under the General Motors Hourly-Rate Employees Pension Plan, effective August 1, 1998, with survivor spouse coverage for his then-wife, Cheryl L. Richardson. (*Id.* at 5). Howard died on January 4, 2010. (D.I. 3, ¶ 8). Cheryl's surviving spouse benefits began the following month in February 2010. (D.I. 19-1 at 61). The Plan states, "In no event may an election for survivor benefits be made or changed after the death of the employee.[1] (D.I. 19-2 at 11 [§ 10(k)]).

---

[1]Plaintiff's claim would reduce or eliminate the survivor benefit currently being paid to Cheryl because the Plan cannot pay the same benefit twice. (D.I. 19-2 at 51 [§ 1(E)(3) (second paragraph)] (describing the permanent reduction that must occur to surviving spouse benefits if an alternate payee is awarded a separate interest in benefits that survive the death of the participant).

Two months after Howard died, on March 16, 2010, Plaintiff obtained a "Qualified Domestic Relations Order" ("QDRO") from the Family Court of the State of Delaware in and for New Castle County. (D.I. 19-1 at 7-10). On March 20, 2010, Plaintiff submitted the order to the Plan for review and qualification. (*Id.* at 6). The March 16, 2010 order was the first domestic relations order submitted to the Plan for review and qualification.[2] It did not purport to be an amendment or modification to any prior domestic relations order, and it was not entered on a *nunc pro tunc* basis. (*Id.* at 7-10).

The March 16, 2010 order identified Plaintiff as Howard's former spouse and "alternate payee" and purported to grant her a "separate interest" award (*i.e.*, a portion of Howard's accrued benefit as of the date of his benefit commencement, to be paid for the duration of Plaintiff's life without regard to the death of Howard). (*Id.* at 7-8 & ¶ 9). The order denied Plaintiff's entitlement to any part of any early retirement subsidy, early retirement supplement, interim supplement, temporary benefit or post-retirement increases, and it stated that Plaintiff would not be treated as the surviving spouse for Howard's Qualified Joint and Survivor Annuity should he (as he did) die after commencing benefits. (*Id.* at ¶¶ 10-12, 19). The Plan provides that an alternate payee's separate interest award will result in a permanent reduction to the surviving spouse benefits. (D.I. 19-2 at 51 ¶ E.3.). The March 16, 2010 order provides that the Plan must make a determination of the qualified status of the order, and that, in the event of a conflict between the terms of the order and the Plan, the terms of the Plan

---

[2] That it was the first may be inferred from its content. Plaintiff does not contend otherwise.

2

prevail; and that nothing in the order could be construed to require the Plan to provide any type or form of benefit or option not otherwise available under the Plan, including, without limitation, increased benefits. (D.I. 19-1 at 7, 10).

Pursuant to the Plan, GM is responsible for the Plan administration and is granted all powers necessary to carry out its provisions, including the establishment of rules for the administration of the Plan. (D.I. 19-2 at 21 [Art. VI]). GM established written QDRO approval guidelines and procedures and delegated Fidelity Workplace Services LLC the authority to determine whether domestic relation orders relating to the Plan are qualified. (*Id.* at 47-81).

Fidelity acknowledged receipt of Plaintiff's order and informed her that the QDRO guidelines could be accessed online or by calling the GM Benefit Center. (D.I. 19-1 at 15). On April 21, 2010, Fidelity advised Plaintiff in writing that it had determined that the March 16, 2010 order could not be qualified. (D.I. 3 at 15). The letter explained that Howard's benefit had terminated with his death and that there was no remaining lifetime benefit that could be paid to Plaintiff. (*Id.*). The letter further explained that the post-retirement survivor annuity had vested in the new spouse and could not be reassigned. (*Id.*). Fidelity concluded that, under the circumstances, the order must be non-qualified. (*Id.*)

On May 1, 2010, Plaintiff disputed the non-qualification determination and argued that Howard's death should have no effect on the validity of the order. (D.I. 19-1 at 16-24). On May 4, 2010, Fidelity replied, stating that the order could not be qualified because there was no remaining benefit that could be assigned, as Howard's

3

lifetime benefit had terminated with his death, and the remaining surviving spouse benefits vested in Cheryl could not be re-assigned. (*Id.* at 25).

Plaintiff responded to the denial on May 14, 2010. (*Id.* at 26). Plaintiff argued that the order created her right to a divided share of Howard's benefit and that it was immaterial that he had remarried, elected joint and survivor benefits in favor of Cheryl, retired, been paid twelve years of benefits, and then died. (*Id.* at 26-33). She emphasized that her claim had "nothing whatsoever" to do with Cheryl's survivor spouse benefits. (*Id.* at 26). On June 1, 2010, Fidelity replied, explaining that Howard's benefit could not be divided and assigned pursuant to the March 16, 2010 order because his benefit interest terminated with his death in January 2010. (*Id.* at 35). Fidelity stated that it had confirmed with GM that there was no record of a prior domestic relations order that would evidence an intent to assign Howard's pension benefit interest to Plaintiff before that interest was terminated. (*Id.*) Fidelity advised Plaintiff that if she had correspondence to the contrary to forward it at her earliest convenience. (*Id.*) Fidelity considered the matter "closed." (*Id.*).

Nothing further happened for more than two years. On January 3, 2013, however, Plaintiff renewed the correspondence, seeking to challenge Fidelity's April 21, 2010 non-qualification decision on the ground that the domestic relations order was a "property settlement" that was not about death or survivor benefits. (*Id.* at 37). Plaintiff argued "there is no [statute] of limitation." (*Id.*). Fidelity responded on GM's behalf on January 17, 2013, stating that there was no QDRO on file with the Plan at the time of Howard's death; that Howard's benefit rights ceased with his death; and that, although

4

the Plan did provide a survivor benefit, that benefit was vested in Cheryl, and there were no further benefits to be paid. (*Id.*).

Defendant seeks summary judgment on the grounds that: (1) Plaintiff's claims are time-barred, or, in the alternative, that the Court should affirm the non-qualification determination; and (2) ERISA preempts the claims for non-benefit remedies.

II.   STANDARDS OF LAW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "could affect the outcome" of the proceeding. *See Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

If the moving party is able to demonstrate an absence of disputed material facts, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment. *Id.* Rather, the nonmoving party must present enough evidence to enable a jury to reasonably find for it on that issue. *Id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the

5

moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

III.   DISCUSSION

The Court turns first to the limitations issues, as it is dispositive of the ERISA claim. Defendant contends the claim was not timely filed, while Plaintiff argues that Howard's death is not relevant to the statute of limitations case. In addition, she contends that there is no statute of limitations for this claim.

ERISA does not contain a statute of limitations for recovery of benefits, but that does not mean there is no statute of limitations for such claims. The Court establishes a statute of limitations by looking to the statute of limitations for the state law claim that is most analogous to the claim for benefits under ERISA. *See DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 158-60 (1983). The Court "borrows" the most analogous statute of limitations from the forum state, that is, Delaware. *Romero v. The Allstate Corp.*, 404 F.3d 212, 220 (3d Cir. 2005); *Syed v. Hercules, Inc.*, 214 F.3d 155, 159 (3d Cir. 2000). The Third Circuit has held that the one-year statute of limitations found at 10 Del. C. § 8111 is applicable to claims for recovery of benefits under an ERISA plan. *See Syed*, 214 F.3d at 159-61.

Plaintiff's claim accrued when Fidelity first denied her benefit claim. *See id.* at 158-61 (affirming District Court's grant of summary judgment as time-barred where plaintiff filed suit almost two years after the initial benefit denial and fifteen months after the final decision on appeal). The benefit claim was first denied on April 21, 2010. Plaintiff's Complaint was filed on March 24, 2014, more than one year from the decision to deny her claim for benefits. This would be true even if for some reason one of the

other letters denying her claim for benefits (*i.e.*, May 4, 2010, June 1, 2010, or January 17, 2013) was used as the day when the statute of limitations started to run. Plaintiff's ERISA claim, therefore, is time-barred.[3]

In addition to the ERISA claim, Plaintiff seeks punitive damages, sanctions and other penalties. Defendant moves for summary judgment on the grounds that these claims are preempted by ERISA, which provides Plaintiff's exclusive remedy. *See* 29 U.S.C. § 1132. Plaintiff addresses the issue only to the extent that she argues that "any increased amounts payable to [her] will be determined by the Court in the form of its judgment, penalties, fines, fees, etc." (D.I. 20 at 3).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004). The intent in enacting ERISA was to promote the interests of employees and their beneficiaries in employee benefit plans by "eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 99 (1983) (quoting 120 Cong. Rec. 29933 (1974)). The "express preemption" provision, § 514 of ERISA, provides in pertinent part: "Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in [section 1003(a) of this title] and not exempt under [section 1003(b) of this title]." 29 U.S.C. §1144(a). ERISA defines "State law" as "all laws, decisions, rules, regulations,

---

[3]The Court believes that Defendant's alternative position is correct, and that were I not granting summary judgment on the statute of limitations, it would be appropriate to grant summary judgment on Defendant's alternative grounds.

7

or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). A state-law claim "relates to" an ERISA plan if "the existence of an ERISA plan was a critical factor in establishing liability," and "the trial court's inquiry would be directed to the plan." *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992).

In addition, the express preemption provisions of ERISA are "deliberately expansive" to establish pension plan regulation as "exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). ERISA's provisions preempt all state law claims alleging any sort of tort liability or financial harm. *Ludwig v. Carpenters Health & Welfare Fund of Philadelphia & Vicinity*, 383 F. App'x 224, 228 (3d Cir. 2010) (per curiam). In addition, ERISA preempts punitive damage claims and the like. *See Huss v. Green Spring Health Servs., Inc.*, 18 F. Supp. 2d 400, 408 (D. Del. 1998).

The Complaint alleges malfeasance by Defendant and seeks punitive damages as well as other unnamed sanctions. Plaintiff may not recover under her theories or allegations seeking punitive damages, sanctions and other penalties given that they are preempted by ERISA. *See 1975 Salaried Retirement Plan*, 968 F.2d at 406; *see, e.g., Berger v. Edgewater Steel Co.*, 911 F.2d 911, 923 (3d Cir. 1990) (plaintiff's misrepresentation claims were preempted by ERISA because they related to an employee benefit plan). Therefore, the Court will grant Defendant's motion for summary judgment.

Finally, the Court will dismiss Defendants Fidelity Investments, QDRO Administration Group, and Doe Defendants. The Court's docket reflects that Plaintiff did not seek the issuance of summonses for Fidelity Investments and QDRO

8

Administration Group, and they have therefore never been served. Nor did Plaintiff identify or serve the Doe Defendants. Notably, Plaintiff acknowledged in her opposition to Defendant's motion to dismiss that GM is the Plan Administrator and true Defendant in the case. (*See* D.I. 12). Finally, Plaintiff fails to state claims against Fidelity Investments, QDRO Administration Group, and Doe Defendants since, as discussed above, the ERISA claims are time-barred and the remaining claims are preempted by ERISA.

IV. CONCLUSION

For the above reasons, the Court will grant Defendant's motion for summary judgment. (D.I. 18). The Court will dismiss Defendants Fidelity Investments, QDRO Administration Group, and Doe Defendants.

An appropriate order will be entered.